**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crime No.: 26-mj-77 (MJS)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **J'QUAN BAKER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT**
**OF TEMPORARY AND PRETRIAL DETENTION**

The government submits this memorandum in support of its request that the defendant be temporarily detained to permit revocation of his probation or, in the alternative, be detained pending trial.

**I.      Introduction**

The defendant presents a danger to the community.  He is charged with illegally possessing a firearm.  His possession of a firearm is particularly menacing because, as discussed more fully below, he recently appeared in a video, brandishing firearms – some with extended magazines and machine gun conversion devices – in a manner that glorifies firearms and the carnage they cause.

**II.      Posture**

On April 16, 2026, this Court issued a criminal complaint charging the defendant with violating 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon).  At the defendant's initial appearance, on April 20, 2026, the government requested (1) that he be temporarily detained to permit revocation of his probation, 18 U.S.C. § 3142(d)(1)(A)(iii); and (2) that he be detained

pretrial because he presents a danger to the community.  18 U.S.C. § 3142(f)(1)(E).  A detention hearing is currently scheduled for April 21, 2026.

**III.    Facts supporting the charge against the defendant.**

On April 13, 2026, law enforcement executed a search warrant at 1435 Spring Road NW, Apartment 301, Washington, D.C. 20010.  This location is linked to the defendant in two principal ways.  First, data collected pursuant to Search Warrant #26-sc-531, placed the defendant's cellular telephone[1] at that the search location on a nightly basis for the approximately a month proceeding the search.  Second, surveillance video depicts the  defendant at the search location on February 16, February 17,  March 22, and March 25, 2026.

During the search, agents recovered an unloaded, Taurus G25 pistol, 9mm.  The pistol was located on a windowsill.  As depicted in Figure 1 below, an Apple iPhone, which was unlocked by using the defendant's Face ID, was found abutting the pistol.  The defendant's Navy Federal Credit Union bank card was also located near the pistol.



*Figure 1*

---

[1]       The number for this telephone was provided by the defendant to his Maryland probation officer.

The firearm was recovered from a bedroom associated with the defendant.  Specifically, the defendant's Washington, D.C., Identification Card was found in the room, as were his Maryland Driver's License and paperwork associated with the defendant.  The latter two items are depicted in Figures 2 and 3, below.



*Figure 2*



*Figure 3*

## IV.    Bases for detention

There are two bases to detain the defendant.  First, the defendant appears to be on probation in a Maryland criminal matter.  He should, therefore, be temporarily detained to permit revocation of his probation.  *See* 18 U.S.C. § 3142(d)(1)(A)(iii).  Second, the defendant is charged with violating 18 U.S.C. § 922(g)(2).  A detention hearing must be held when a person is charged with possession of a firearm.  *See* 18 U.S.C. § 3142(f)(1)(E).  Consideration of the statutorily prescribed factors demonstrates that no conditions of release would ensure the safety of the community.

## A.    The defendant should be temporarily detained to permit revocation of his probation.

If the Court determines that the defendant was on probation and he poses a danger to the community, the Court "shall order the detention of such person, for a period of not more than ten days . . ." 18 U.S.C. § 3142 (d)(1)(A)(iii), to permit revocation of this probation.  Here, the

defendant appears to be on probation in Maryland Case, C-16-CR-24-000127, *see* PRETRIAL

SERVICES REPORT, at 3[2], and, as set forth below, *see* §IV.B, the defendant poses a danger to

the community.

Since the government is also seeking the defendant's pretrial detention, that detention

hearing should be continued until the defendant's probation revocation is resolved:

> We note that, in cases in which the Government intends to seek pretrial detention in the event that it is unable to secure revocation of a prior conditional release, the preferred course is for the Government, at the time of the accused's first appearance, to move for (1) a temporary detention order under 3142(d), and (2) a pretrial detention hearing under 3142(f), *to be continued until the end of the temporary detention period*.
>
> *       *       *
>
> Under 3142(f), a pretrial detention hearing may be continued for more than three days, on the Government's motion, only "for good cause." We think that "good cause" exists for continuing a pretrial detention hearing until the expiration of a period of temporary detention ordered under 3142(d).

*United States v. Alatishe*, 768 F.2d 364, 368-69 n.10 (D.C. Cir. 1985) (emphasis added).

Accordingly, the government requests that the defendant be temporarily detained pending

revocation of his probation in the Maryland criminal matter. The government further requests that

the defendant's pretrial detention hearing be continued pending resolution of the probation matter.

**B.     The defendant should be detained pretrial.**

Releasing the defendant would endanger the community, so he should be detained pending

trial. The Bail Reform Act lists four factors that guide the Court's pretrial detention decision: (1)

the nature and circumstances of the offense charged, including whether it involves a firearm; (2)

the weight of the evidence against the defendant; (3) the history and characteristics of the

defendant, including whether the defendant was on probation at the time of the offense; and (4)

---

[2]     The government understands from the Pretrial Services Report that the defendant is still on probation pending payment of restitution. *Id.* at 1 and 3.

the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g) (1-4).  Analysis of these factors demonstrates that release of the defendant would present a danger to the community.[3]

### 1.    The Nature and Circumstances of the Offense

Illegally possessing a firearm presents a grave danger to the community.  As set forth more fully below, this danger is particularly pronounced here, since the defendant is depicted in a video, in which he brazenly brandished apparent firearms, including one which seems to have a machine gun conversion device.

### 2.    The Weight of Evidence Against the Defendant

The evidence against the defendant is strong.  The firearm was found in his house.  *See* § II, *supra*.  It was located adjacent to an iPhone that was unlocked using defendant's face ID.  And the following items related to the defendant were either near the firearm or in the room where the firearm was recovered:  (1) defendant's Navy Federal Credit Union banking card; (2) the defendant's Washington, D.C., Identification Card, (3) a wallet containing the defendant's Maryland Driver's License, and (4) paperwork in defendant's name.  In sum, particularly when combined with the defendant's video (*see* §3, *infra*), this is a very strong constructive possession case.

### 3.    The History and Characteristics of the Defendant

The defendant's history and characteristics support detention in this matter – primarily – in two ways.  First, the defendant appears in a recent video which glamorizes the use of firearms.  On February 26, 2026, law enforcement became aware of a music video publicly available on YouTube entitled Where is GizWop? by Slugz ("the Music Video").  The video appears to have

---

[3]    A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence.  *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

been shot in an apartment complex, located at 4808 Alabama Avenue, Washington, D.C.  During

the Music Video, the defendant and others displayed what appeared to be firearms.  For example,

in Figure 4, below, the defendant is seen wearing a black hoodie, black facemask, a silver necklace

with a "SLUGZ" medallion, and a wristwatch.



*Figure 4*

Throughout the video, the defendant and others brandish what appear to be firearms, including those that appear to have extended magazines and machinegun conversion devices.[4] For example, in Figure 5, below, another still image taken from the video, the defendant displays an apparent firearm that has an extension to the rear of the pistol's slide, consistent with a machinegun conversion device.



*Figure 5*

---

[4] Pursuant to Title 26, United States Code, Section 5845(b), a "machinegun" includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") classifies "machinegun conversion devices"—sometimes referred to as "switches," "auto sears," "Glock switches," or "invisi-switches"—as machineguns under this definition, because their sole function is to convert a semiautomatic firearm so that it is capable of firing more than one shot automatically, without manual reloading, by a single function of the trigger.

Figure 6, below, is another still image taken from the video.  In this image, the defendant appears to be holding a firearm with an extended magazine inserted into it.



*Figure 6*

Second, the relevant history and characteristics of the person include, "whether, at the time of the current offense or arrest, the person was on . . . parole . . . or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . ."  18 U.S.C. § 3142(g)(3)(B).  Here, the defendant appears to be on probation in Maryland Case, C-16-CR-24-000127.  *See* PRETRIAL SERVICES REPORT, at 1 and 3.

The Music Video, in which the defendant romanticizes the use of firearms, combined with his probation status, demonstrates that defendant's characteristics support pretrial detention.

**4.     The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release**

Defendant illegally possessed a stolen firearm.  But perhaps of even more concern,  shortly before that firearm was seized, the defendant appeared in the Music Video, where he brazenly brandished apparent firearms, including those apparently equipped with a machinegun conversion device and an extended magazine.  Machine gun conversion devices[5] and extended magazine make firearms even more dangerous.  They have but one purpose – to increase the carnage caused by gun violence.  The defendant's brash glorification of firearms and increasing their destructive force demonstrate that, if released, the defendant would present a danger to the community.

---

[5]     *See e.g.*:

The Commission's amendment responds to concerns by the Department of Justice and other commenters about the proliferation of MCDs, which pose a heightened danger to the public because a weapon equipped with an MCD fires more rapidly and with less control than an identical weapon without an MCD. Of note, the Department of Justice pointed to a 570% rise in MCD recoveries in 2021 as compared to 2017 and to the growing involvement of automatic gunfire reported in shootings.  Commission data similarly reflects a recent rise in firearms cases involving MCDs.  In fiscal year 2023, 4.5 percent of cases sentenced under §2K2.1 involved an MCD—an increase from one percent of §2K2.1 cases in fiscal year 2019.  While most cases involving MCDs in fiscal year 2023 involved a single MCD, more than 18 percent involved four or more devices.

AMENDMENTS TO THE SENTENCING GUIDELINES, April 30, 2025, at 17Id. at 17-18.

## V.     Conclusion

For the foregoing reasons, as well as those that may be set forth at a hearing on this motion, no condition or combination of conditions would ensure the return of the defendant to all future court appearances and the safety of any person or the community.  Accordingly, the government requests that the Court order that the defendant be temporarily detained to permit revocation of his probation, or, in the alternative, detained pending trial in this matter.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1794
john.d.crabb@usdoj.gov